643 F.2d 924
 Elizabeth POWELL, Dalree Mapp, Katherine Purrington, Althea
McDaniels, Paula Herbert, Cyndi Reed, and Margaret Gatling,
on Behalf of Themselves and all Others Similarly Situated,
Plaintiffs-Appellees-Cross-Appellants,
v.
Benjamin WARD, Individually and as Commissioner of
Correctional Services, Janice Warne, Individually and as
Superintendent of Bedford Hills Correctional Facility, and
Phyllis Joan Curry, Individually and as Superintendent of
Bedford Hills Correctional Facility,
Defendants-Appellants-Cross-Appellees.
 Nos. 522-3, 80-2141-2162.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 27, 1980.
Decided March 4, 1981.
 
 Judith A. Gordon, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., State of New York, George D. Zuckerman, Asst. Sol. Gen., Robert A. Forte, Asst. Atty. Gen., Mary Anne B. Orenstein, Legal Asst., New York City, of counsel) for defendants-appellants-cross-appellees.
 Elizabeth L. Koob, Michael D. Hampden, New York City (James S. Braude, New York City) for plaintiffs-appellees-cross-appellants.
 Before KAUFMAN, KEARSE and BRIGHT,* Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants-Appellants appeal from an order of the United States District Court for the Southern District of New York, Charles E. Stewart, Judge, dated April 29, 1980, as amended by an order dated May 1, 1980 ("the 1980 Order"), 487 F.Supp. 917, holding defendant Phyllis Joan Curry in civil contempt of a preliminary injunction entered June 23, 1975, as modified by this Court on appeal, 542 F.2d 101 (2d Cir. 1976) ("1975 Order" or "Order"). The 1980 Order imposed a fine on Curry, ordered the appointment of a special master to oversee future compliance with the 1975 Order, ordered the expungement of certain records, and awarded plaintiffs damages in the amount of $1 and reasonable attorneys' fees. Plaintiffs have cross-appealed, contending, inter alia, that Curry should have been held in criminal contempt, that the expungement order was too limited, and that plaintiffs were entitled to a larger award of damages.
 
 
 2
 We modify the 1980 Order with respect to the period for which records are to be expunged and, as thus modified, we affirm.
 
 
 3
 The plaintiffs and the class they represent are inmates at New York's Bedford Hills Correctional Facility ("Bedford Hills") who moved for an order holding defendant Curry, the present Superintendent of Bedford Hills, in contempt of the court's 1975 Order governing disciplinary proceedings against inmates at Bedford Hills. The circumstances that gave rise to the 1975 Order are fully set forth in the prior opinions in this case, 392 F.Supp. 628 (S.D.N.Y.1975), affirmed as modified, 542 F.2d 101 (2d Cir. 1976), familiarity with which is assumed.
 
 
 4
 The 1975 Order was designed to require that, in disciplining inmates, defendants comply with the procedural requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[1] The types of discipline that were the focus of the Order are those that could result in any of the various "special" confinements that exist at Bedford Hills. Special confinements can result from either an Adjustment Committee or a Superintendent's Proceeding,[2] and can take the form of solitary confinement in a Segregation Unit, restricted freedom in a Special Housing Unit[3] or the loss of right to leave a prison cell, called "keeplock."[4] 487 F.Supp. at 925. The 1975 Order provided, in pertinent part, as follows:
 
 
 5
 1. Defendants shall conduct all Adjustment Committee or Superintendent's Proceedings, or other disciplinary proceedings that may result in an inmate at Bedford Hills Correctional Facility being confined in a Special Housing Unit or Segregation Unit, in accordance with the following procedures:
 
 
 6
 a) Formal written notice of charges must be served on the inmate at least 24 hours before the hearing;
 
 
 7
 b) The inmate shall be permitted to call witnesses on her behalf provided that so doing does not jeopardize institutional safety or correctional goals. The written notice of charges served in accordance with Paragraph 1(a), shall inform the inmate of her right to call witnesses;
 
 
 8
 c) If permission to call a witness is denied, the party conducting the hearing shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented by the witness.
 
 
 9
 d) At the conclusion of the hearing, the inmate shall be given a written statement of the evidence relied on and the reasons for any action taken;
 
 
 10
 e) No person who has participated in any investigation of the acts complained of, or who was a witness to those acts shall be a member of any Adjustment Committee or Superintendent's Proceeding relating to those acts;
 
 
 11
 2. If any inmate is confined to Special Housing or segregation "pending investigation" of charges, a hearing must be held within seven days of the date of her confinement. In unusual or emergency situations, the seven-day requirement may be extended but only with the permission of the Commissioner of Correctional Services or his designee.
 
 
 12
 1975 Order at 1-2.
 
 
 13
 The present motion for contempt and other relief on behalf of the class was filed in the spring of 1979. Plaintiffs contended that defendants had failed to follow the procedures mandated by the 1975 Order with respect to Adjustment Committee Proceedings and Superintendent's Proceedings.
 
 District Court's Findings of Noncompliance
 
 14
 The district court held several days of hearings on plaintiffs' motion; nine members of the plaintiff class testified; more than a dozen affidavits were submitted; approximately 500 pages of documents were received in evidence. After evaluating all the evidence, Judge Stewart found, in a thorough and thoughtful opinion, that Curry had "failed to comply in significant respects with virtually every provision of our order." 487 F.Supp. at 933. In particular the court found that the 1975 Order had been violated in the following respects:
 
 
 15
 (1) Adjustment Committee Proceedings : Despite the express mention of the Adjustment Committee in paragraph 1 of the 1975 Order, defendants had made no effort to conduct any of the Adjustment Committee Proceedings in accordance with the procedures mandated by the 1975 Order.
 
 
 16
 (2) Notice of Charges : Defendants had failed to give inmates notices that adequately disclosed the substance of the offenses with which they were charged,[5] in violation of P 1(a) of the 1975 Order. The only specification of the nature of the offense charged was citation to a code number; to find out what offense is covered by the code number an inmate must refer to the "Standards of Inmate Behavior" rule book, which (a) is not always readily available to inmates, (b) often lists categories of offenses in general or ambiguous terms, and (c) is subject to varying interpretations by different prison officials.
 
 
 17
 (3) Witnesses : Defendants had failed to notify inmates that they may call witnesses to testify in their behalf, in violation of P 1(b) of the 1975 Order. In addition, witnesses were not allowed to be present at the hearing. To the extent that defendants interviewed witnesses requested by inmates they did so outside the presence of the inmate and tape-recorded all or part of the interview; they did not normally incorporate the interview into the record of the hearing and they did not allow the inmate to hear the tape or see a transcript of the interview. The court ruled that P 1(b) must be interpreted to allow witnesses to be present at disciplinary proceedings unless the appropriate officials determine that this would jeopardize institutional safety or correctional goals; in the latter circumstances, a written explanation must be given to the inmate.
 
 
 18
 (4) Explanation of Denial of Request for Witnesses : Defendants had not given inmates written statements of their reasons for denying requests for witnesses, in violation of P 1(c) of the 1975 Order. The court rejected defendants' contention that explanation is required only when the denial is based on grounds of institutional safety or correctional goals.
 
 
 19
 (5) Statement of Evidence and Reasons for Disposition : Defendants had failed, at the close of any Adjustment Committee Proceeding and at the close of some Superintendent's Proceedings, to give written statements specifying the evidence relied on and the reasons for any action taken, in violation of P 1(d) of the 1975 Order. Some of the written statements that had been given following Superintendent's Proceedings had been inadequate to disclose the evidence relied on.
 
 
 20
 (6) Membership of the Hearing Committee : Defendants had allowed hearing officers to conduct investigations of the acts complained of, and had allowed persons involved in the relevant incident to preside over the inmates' hearing, in violation of P 1(e) of the 1975 Order.
 
 
 21
 (7) Hearings Within Seven Days of Confinement : Defendants had kept inmates confined in special units for periods substantially longer than seven days "pending investigation" of charges, in violation of P 2 of the 1975 Order. The court rejected defendants' contention that inmates could be kept so confined indefinitely "pending investigation" so long as a hearing was commenced within seven days of the initial confinement.
 
 
 22
 (8) Notice in Spanish for Spanish Speaking Inmates : Defendants had given notices and statements only in English although several inmates testified that they did not speak or understand English and could not fully understand what went on at the hearing. The court therefore clarified the 1975 Order to specify that due process requires that Spanish speaking inmates who cannot read and understand English be given notices and statements in Spanish.[6]
 
 
 23
 On the basis of these findings the court concluded that although nearly five years had passed since the 1975 Order was issued, "the due process violations that were enjoined at that time are still widespread." 487 F.Supp. at 935. The court found that defendants had in several instances adopted interpretations of the 1975 Order that were at odds with both the clear language and the intent of the Order, and that they had adopted procedures that contravened provisions of the Order. The court noted that this was not the first time it had been necessary to hold that the procedures employed at Bedford Hills were not in compliance with the 1975 Order.[7]
 
 
 24
 The court found that Curry had "not (been) reasonably diligent in complying or even attempting to comply with" the 1975 Order. Id. at 933. She had been Superintendent for some nine months before she even learned of the existence of the Order, and apparently lacked sufficient concern for the actual state of compliance efforts once she did learn of the Order. While not questioning Curry's good faith, the court found inexcusable such ignorance on the part of an official responsible for achieving compliance with the Order.
 
 Remedies Ordered
 
 25
 On the basis of all but two of the above findings[8] the court held Curry in civil contempt of the 1975 Order. Declining to find that her noncompliance was willful, the court denied plaintiffs' motion to hold Curry in criminal contempt.
 
 
 26
 Seeking principally to cause defendants to achieve and maintain disciplinary proceedings that are in accordance with due process, the court ruled that the preliminary injunction embodied in the 1975 Order "shall constitute permanent injunctive relief," and concluded that a fine was necessary to demonstrate to defendants the seriousness of their noncompliance and "to generate the effort necessary to bring about prompt and meaningful compliance with (the 1975 Order) and the Constitution." Id. at 935. Accordingly, the court imposed on Curry in her capacity as Superintendent of Bedford Hills a fine of $5000 to be paid within one month from the date of entry of the 1980 Order, plus $1000 thereafter for every additional day of noncompliance. The court provided that the contempt could be purged if compliance were achieved within that thirty-day period. In addition, given Curry's lack of diligence and lack of concern for compliance with the 1975 Order, the court determined to appoint a special master to oversee compliance with the Order and report periodically to the court concerning defendants' progress.
 
 
 27
 In order to compensate the victims of the defendants' noncompliance with the 1975 Order, the court ordered that for the period between June 24, 1977 and the date of the 1980 Order, the records of all Adjustment Committee proceedings, and of such Superintendent's Proceedings as the special master finds violated the 1975 Order, be expunged. The order of expungement excluded, on grounds of res judicata, certain records of class member Janie Harris, who had previously sought and been denied expungement of those records in state court.
 
 
 28
 Finding that expungement would remedy a significant portion of the injury suffered by the class as a result of the noncompliance with the 1975 Order, and that plaintiffs had not adequately demonstrated any other actual injury, the court declined to award more than nominal damages. The court ruled that plaintiffs were entitled under 42 U.S.C. § 1988 to recover reasonable attorneys fees.
 
 
 29
 Defendants have appealed from virtually all of the 1980 Order. Largely on the basis of their interpretation of the 1975 Order as not having application to Adjustment Committee Proceedings, they assert chiefly that the Order was not sufficiently clear to support a finding of contempt, and that the evidence of noncompliance was not sufficiently clear and convincing to support the relief ordered. Plaintiffs have cross-appealed, contending principally that Curry should have been held in criminal contempt, that all of plaintiff Harris's records should be included in the expungement order, that the period for which inmate records should be expunged should begin on June 23, 1975, and that the court should have awarded them substantial compensatory and punitive damages. We find no merit in any of defendants' contentions. As to plaintiffs' arguments, we agree only that the period for which expungement of records is ordered should be expanded. In all other respects we find the 1980 Order was proper. Few of the arguments made to us on appeal require extended discussion.
 
 A. Contempt
 
 30
 A court has the inherent power to hold a party in civil contempt in order "to enforce compliance with an order of the court or to compensate for losses or damages." McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). See Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979); Sunbeam Corp. v. Golden Rule Appliance Co., 252 F.2d 467 (2d Cir. 1958). See generally United States v. United Mine Workers, 330 U.S. 258, 302-04, 67 S.Ct. 677, 700, 91 L.Ed. 884 (1947). The power may properly be exercised only if the order is clear and unambiguous, International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 75-76, 88 S.Ct. 201, 207, 19 L.Ed.2d 236 (1967), the proof of noncompliance is "clear and convincing," NLRB v. Local 282, International Brotherhood of Teamsters, 428 F.2d 994, 1001-02 (2d Cir. 1970), and the defendant has not "been reasonably diligent and energetic in attempting to accomplish what was ordered." Aspira of New York, Inc. v. Board of Education, 423 F.Supp. 647, 654 (S.D.N.Y.1976). We find that all of these prerequisites have been satisfied.
 
 
 31
 Our review of the 1975 Order satisfies us that every provision relied on by Judge Stewart to support the contempt ruling is clear and unambiguous. Only two such provisions are strenuously challenged by defendants. Their principal contention is that the 1975 Order either excluded or did not clearly include Adjustment Committee Proceedings. This argument borders on the frivolous. Paragraph 1 states, "Defendants shall conduct all Adjustment Committee or Superintendents' Proceedings, or other disciplinary proceedings that may result in an inmate ... being confined in a Special Housing Unit or Segregation Unit, in accordance with the following procedures ...." Defendants' attempt to read "Adjustment Committee" out of the 1975 Order was charitably described by the district court as "grammatical gymnastics." If, as defendants would have us believe, Adjustment Committees do not have the power to order solitary confinement or the like (so that the 1975 Order perhaps should not have applied to Adjustment Committees), their appropriate remedies were to appeal this portion of the 1975 Order, which they did not do,[9] or to seek modification of the Order in the district court, which they have not done. Perhaps the reason they did neither is that in fact Adjustment Committees in 1975 had the power to order a keeplock for up to two weeks, and currently has the power to order such confinement for up to seven days. See note 2, supra. The district court noted that a keeplock is sometimes even more restrictive than confinement in a Special Housing Unit, see note 4, supra, and this Court had held that such keeplocks provide the necessary predicate for recognition of due process rights under McDonnell. McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). In any event, the application of the 1975 Order to Adjustment Committee Proceedings is clear and unqualified.
 
 
 32
 Nor can defendants' interpretation of paragraph 2 of the 1975 Order as allowing indefinite special confinement, so long as a hearing is merely commenced within seven days, be accepted. Paragraph 2 clearly requires a hearing to be "held" within seven days, and provides a procedure for emergency extensions. Both the Order and the prior opinions in this case make it clear that the central concern was protecting inmates from prolonged confinement prior to a determination of charges. See 392 F.Supp. at 632; see also 542 F.2d at 103. We reject defendants' contentions that this provision of the Order is ambiguous.
 
 
 33
 We agree also with the district court's view that the evidence of defendants' noncompliance with the 1975 Order was clear and convincing.[10]As to Adjustment Committee Proceedings, defendants concede that they made no effort to institute the procedures set forth in the 1975 Order. Defendants also concede that on several occasions they failed to advise inmates of their rights to call witnesses, and that they never advised an inmate of the basis of a decision not to call a requested witness. In addition to these concessions, there was ample evidence that defendants' formal notices of charges were usually inadequate to disclose the substance of the offense charged and were often untimely, as well as extensive evidence of defendants' failure at the close of disciplinary proceedings to give the required written statements of the evidence relied on and the reasons for the action taken. There was also sufficient evidence and no genuine dispute that the officials who conduct the disciplinary hearings have sometimes been involved in the events complained of or are allowed to conduct investigations relating to the matter before them.[11] And there was ample evidence that inmates were kept in seclusion without a determination of charges far longer than the seven days permitted by the 1975 Order: the court cited several instances ranging from thirteen to sixteen days, and we note other evidence of such confinements for up to twenty-two days.
 
 
 34
 Finally, the evidence was more than adequate to support the finding that Curry was not reasonably diligent in attempting to ensure compliance with the 1975 Order. Her "apparent ignorance" of the 1975 Order for nearly a year after she assumed office, 487 F.Supp. at 934, her determination "apparently unilaterally and in the face of contrary views of her predecessors and superiors, that the language and spirit of the order could be ignored," id. at 933, and her "apparent lack of concern for the actual state of compliance efforts over the last few years," id. at 935, are inexcusable.
 
 
 35
 In all the circumstances, the court's ruling that Curry is in civil contempt of the 1975 Order was entirely appropriate.[12] The specific provisions of the contempt order are clearly designed to induce compliance with the 1975 Order, and are well within the bounds of the court's appropriate exercise of its discretion. See Vuitton et Fils S.A. v. Carousel Handbags, supra; Morgan v. Kerrigan, 530 F.2d 401, 427 (1st Cir.), cert. denied, 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386 (1976) (appointment of special master). See generally United States v. United Mine Workers, supra.
 
 B. Expungement
 
 36
 In all the circumstances, the court's order that the records of proceedings that did not comply with the 1975 Order be expunged was an appropriate remedy to compensate plaintiffs for the continued violation of their rights. However, challenges by plaintiffs to two aspects of the court's expungement order deserve attention.
 
 
 37
 First, the court excepted from its expungement order certain records of class member Harris, on grounds that Harris had already litigated (to an unsuccessful conclusion) her entitlement to such expungement in a state order proceeding pursuant to N.Y.C.P.L.R. Article 78. See note 10 supra. This ruling was correct. A prior state proceeding, including an Article 78 proceeding, will preclude relitigation of a civil rights claim in a federal court if the state proceeding reached the federal constitutional issues involved. Ornstein v. Regan, 574 F.2d 115, 117 (2d Cir. 1978); Ellentuck v. Klein, 570 F.2d 414, 422-25 (2d Cir. 1978); 8 Weinstein-Korn-Miller, New York Civil Practice, P 7801.02(4), n.10 (1971). The basis for Harris's Article 78 petition was the failure of defendants to obey various provisions of the 1975 Order with respect to a Superintendent's Proceeding concerning her. The state court assumed the applicability of the 1975 Order, but found against Harris on the facts. Harris v. Curry, (Sup.Ct. Westchester Co. June 15, 1979). Her attempt here to have the records of that Superintendent's Proceeding expunged was properly held barred by res judicata.
 
 
 38
 Second, plaintiffs contend that the court should have ordered the expungement of records of offending proceedings dating back to June 23, 1975, the date of the 1975 Order, rather than just to June 24, 1977. We agree. The court's finding of noncompliance with the 1975 Order was not limited to the period following June 24, 1977, but rather related to the entire life of the 1975 Order. It appears that the court ordered the expungement period to commence with the later date because it had already entered an expungement order for the period prior to June 24, 1977. See 487 F.Supp. at 936; see note 7, supra. However, the earlier expungement order related to only three inmates, not to the class as a whole. In light of defendants' consistent noncompliance and the choice of expungement as the means of redressing the resultant injuries to the plaintiffs, we conclude that expungement relief for the earlier period should be awarded on a classwide basis. See Vuitton et Fils S.A. v. Carousel Handbags, supra. Accordingly, paragraphs 6 and 7 of the 1980 Order are modified to substitute "June 23, 1975" for "June 24, 1977."
 
 C. Damages
 
 39
 Little need be said about the district court's ruling as to damages. It is settled that if actual injury is established, an award of damages may not be withheld.[13] See Vuitton et Fils S.A. v. Carousel Handbags, supra; Yanish v. Barber, 232 F.2d 939, 947 (9th Cir. 1956). Judge Stewart found, however, that with the exception of the existence of damaging prison records, which will be expunged as a result of the 1980 Order, plaintiffs had not adequately proven any actual injury as a result of defendants' noncompliance with the 1975 Order. We cannot say that this finding is clearly erroneous. We thus conclude that the court's award of nominal damages, in accordance with the principle enunciated in Carey v. Piphus, 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978), was proper.
 
 
 40
 The judgment of the district court is affirmed as modified. Costs are awarded to the plaintiffs.
 
 
 
 *
 Honorable Myron H. Bright, of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 In Wolff v. McDonnell, the Court restated the principle that inmates in a prison are protected by the Due Process Clause of the Fourteenth Amendment. Id. at 556, 94 S.Ct. at 2974. The Court explicitly rejected the argument that "the interest of prisoners in disciplinary procedures is not included in that 'liberty' protected by the Fourteenth Amendment," id. at 556-57, 94 S.Ct. at 2974-2975, and required that inmates subject to such procedures receive a variety of due process rights, including advance notice of charges, written statement of evidence relied upon, the right to call witnesses, and an impartial decision maker. Id. at 556-72, 94 S.Ct. at 2974-2982
 
 
 [2]
 New York law provides for two major types of prison disciplinary proceedings: Adjustment Committee Proceedings and Superintendent's Proceedings. 7 N.Y.C.R.R. Parts 252, 253. Adjustment Committee Proceedings are designed to effectuate an inmate's "understanding of and adherence to" the rules governing his behavior, 7 N.Y.C.R.R. § 252.5(a), and are "said to be marked by flexibility and non-punitive intent." Powell v. Ward, supra, 392 F.Supp. at 629, quoting Crooks v. Warne, 74 Civ. 2351, slip op. at 9 (S.D.N.Y.1974) vacated, 516 F.2d 837 (2d Cir. 1975) (judgment for individual inmate in Bedford Hills vacated in light of class relief in Powell ). The Superintendent's Hearings are strictly disciplinary in nature. 7 N.Y.C.R.R. § 253. See Powell v. Ward, supra, 392 F.Supp. at 629. Prior to May 19, 1975, both types of proceedings could result in confinement in a special housing unit or segregation unit. Id. at 630 n.2. The May 19, 1975 amendments to 7 N.Y.C.R.R. §§ 252.3(f) and 252.5(e) revised the scope of Adjustment Committee action such that the Committee could order that an inmate be kept locked in his cell for a period of time not to exceed two weeks, § 252.5(e)(2), or that an inmate be confined to a special housing unit, provided that the Committee immediately recommended that a Superintendent's Proceeding be held. § 252.5(e) (3). By implication, the 1975 amendment deprived the Adjustment Committee of the power to confine an inmate to a special housing unit without an immediate recommendation that a Superintendent's Proceeding be convened. The two-week limitation on keeplocks was reduced to seven days in amendments to § 252.5(e) (2) effective May 12, 1980
 
 
 [3]
 Placement in either a Segregation Unit or a Special Housing Unit removes a prisoner from the general inmate population. The former places an inmate in solitary confinement. The latter allows inmates who cannot commingle with the general inmate population to commingle with each other. 7 N.Y.C.R.R. §§ 300.2(b) and (c). The district court found the distinction to be minor and not relevant to the issues raised in the class action. 392 F.Supp. 628, 630 n.2
 
 
 [4]
 Keeplock is as severe a form of discipline as the other special confinements and potentially even more severe. The district court observed that "(t)he testimony of prison officials and inmates alike indicated that keeplock is the equivalent of solitary confinement, tr. at 316." The court noted that "keeplock is sometimes more restrictive than confinement in the Special Housing Unit, when shower, exercise and other basic privileges are removed." (citation omitted). 487 F.Supp. at 925
 
 
 [5]
 The court found also that notice was sometimes given less than twenty-four hours in advance, in violation of P 1(a); indeed several inmates testified that they did not receive notice until the hearing began. The court found, however, that the substance of such notice as was given was so unenlightening that the inmates' due process rights were not further eroded by the untimeliness. 487 F.Supp. at 926-27
 
 
 [6]
 Thus, in the 1980 Order, Judge Stewart ordered that P 1(c) of the 1975 Order be amended so as to require explicitly that notice of charges, statements of evidence relied on, and statements of reasons for actions taken be given in Spanish to inmates who cannot read and understand English. Defendants have challenged the district court's findings on this issue only on the ground that the court lacked jurisdiction to order this clarification, contending that no plaintiff was, in fact, illiterate in English. We find that the evidence was sufficient to support the clarification
 
 
 [7]
 Apparently the first intimation to the court that the 1975 Order was not being obeyed came in December 1976, when three members of the plaintiff class moved to hold then-Superintendent Warne in contempt for noncompliance with the Order. The district court did not hold Warne in contempt but ordered that all references to the incident that gave rise to the motion be expunged from those plaintiffs' correctional facility and parole files. The court also awarded the plaintiffs attorneys' fees and expressed its concern with the "indications" of noncompliance with the 1975 Order. 74 Civ. 4623, June 2, 1977 (order)
 
 
 [8]
 The court noted that its ruling of contempt was not based on those parts of the 1975 Order that were less than clear at the time of the defendants' noncompliance to wit, the requirement that witnesses be allowed to be present at hearings pursuant to P 1(b), 487 F.Supp. at 928, n.10, and the requirement that notices and statements be given in Spanish to inmates unable to read and understand English. Id. at 932 n.14
 
 
 [9]
 On appeal from the 1975 Order, defendants challenged only two provisions. One related to the membership of Adjustment Committees and Superintendent's Proceedings panels; the other related to the then-inflexible time limitation on holding an inmate in special confinement pending investigation. Both provisions were modified by this Court. 542 F.2d at 102
 
 
 [10]
 Defendants' argument that the court's receipt of evidence from class member Luz Santana was improper on grounds of res judicata is untenable. In early 1978, Santana brought a proceeding under N.Y.C.P.L.R. Article 78, claiming that her Superintendent's Proceeding failed to conform with state rules and regulations and seeking annulment of the Proceeding. Federal constitutional claims were not asserted, and her petition was granted based on state law grounds. Santana v. Superintendent, Bedford Hills Correctional Facility, No. 28 77/77, March 13, 1978 (Article 78 Proceeding, Sup.Ct. Westchester Co.). Res judicata thus does not bar Santana's assertion here of her claims based on the 1975 Order. See Ornstein v. Regan, 574 F.2d 115, 117 (2d Cir. 1978)
 A similar assertion as to Harris has greater merit. Harris, as discussed infra, is barred by res judicata from obtaining here the individual relief that was denied her in her Article 78 proceeding. While the prior judgment against Harris does not preclude the class from litigating its classwide claims, nor bar Harris from enjoying the benefits of relief ordered on a classwide, rather than an individual, basis, see Sledge v. J. P. Stevens & Co., 585 F.2d 625 (4th Cir. 1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979), we note that the district court apparently referred to Harris as one of several inmates who had testified that they were not notified of the right to call witnesses. In Harris's Article 78 proceeding, the court expressly found that she had in fact received such notice. Harris was thus collaterally estopped from relitigating this factual issue, see Restatement of Judgments § 68 (1942), and we see no basis for allowing the class to rely on Harris's barred contention in support of classwide relief. Nevertheless, the proof of defendants' noncompliance with the 1975 Order is clear and convincing even without Harris' testimony. The district judge does not appear to have placed great reliance on Harris's testimony; his thorough opinion cites to it only twice among the scores of transcript citations, and her testimony was not the sole support for any proposition.
 
 
 [11]
 Defendants' argument that there has been no clear and convincing evidence that these hearing officers were not impartial is beside the point. The Order sets clear procedural standards for defendants to meet; defendants, equally clearly, have not met those standards. We need look no farther in order to determine whether defendants have complied with the order
 
 
 [12]
 Assuming that an appropriately clear order has obviously not been complied with, a defendant should not be held in criminal contempt unless the noncompliance is found beyond a reasonable doubt to have been willful. United States v. Greyhound Corp., 508 F.2d 529, 531 (7th Cir. 1974). In the present case the district court expressly declined to find Curry's noncompliance willful. A ruling of criminal contempt would thus have been inappropriate
 
 
 [13]
 Curry claims that her position entitles her to immunity from a damage award. As she was sued in her official capacity, Curry is entitled to a "good faith" defense in a suit for damages brought under 42 U.S.C. § 1983. Wood v. Strickland, 420 U.S. 308, 317-22, 95 S.Ct. 992, 998-1000, 43 L.Ed.2d 214 (1975). This defense is unavailing, however, if she knew or should have known that her conduct violated a constitutional norm. Procunier v. Navarette, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). The 1975 Order and the litigation leading to it put Curry and her predecessors on notice that the Order was designed to require due process in Adjustment Committees and Superintendent's Proceedings. They knew or should have known, therefore, that the noncompliant procedures used at Bedford Hills violated the constitutional rights of the inmates at the facility. The district court was correct in ruling that Curry is not immune from a judgment for damages