**GETTY PETROLEUM CORP., Plaintiff,**

v.

**SHORE LINE OIL COMPANY, INC., Anthony Mazzara and Sally Mazzara, Defendants.**

**No. CV 85–3911.**

United States District Court, E.D. New York.

July 16, 1986.

---

Robert G. Del Gadio, Garden City, N.Y., for plaintiff.

Marcus, Ollman & Kommer, P.C., New Rochelle, N.Y., for defendants; John S. Kommer, of counsel.

MISHLER, District Judge.

Getty Petroleum Corp. ("Getty Petroleum") moves to punish defendant Shore Line Oil Company, Inc. ("Shore Line") and its president, Louis Capossela, for contempt in the violation of this court's permanent injunction order dated November 14, 1985 issued on consent of Shore Line in accordance with a stipulation of settlement dated November 7, 1985. The order provides in pertinent part:

> that Shore Line Oil Company, its agents, servants, employees, attorneys and all persons in active concert or participation with it are hereby enjoined from any manner directly or indirectly, selling, transporting or delivering any gasoline or petroleum product to any gasoline station bearing the mark and designation GETTY.

The language is that to which Shore Line consented in the stipulation of settlement. Shore Line's response is that it understood that the injunctive provision covered only Getty-owned gasoline service stations and not stations individually owned.[1] Subsequent to November 14, 1985, Shore Line delivered non-branded gasoline to the following three gasoline service stations that are "individually owned" selling gasoline under the trademark "GETTY":

1. Eastchester Creek Gas Station, Inc., ("Eastchester Creek") 759 South Fulton Avenue, Mt. Vernon.

2. Dom's Service Station, ("Dom's") 268 Tarrytown Road, Greenburgh.

3. Auto Center, 43 Virginia Road, White Plains.

Shore Line moves to vacate and set aside the permanent injunction order.

The court conducted a hearing and finds: From November 9, 1985 to January 23, 1986, Shore Line made deliveries of gasoline totalling:

| To Eastchester Creek | |
| --- | --- |
| Regular Unleaded | 215,700 gals. |
| Super Unleaded | 214,200 |
| Regular Leaded | 187,500 |

| To Dom's | |
| --- | --- |
| Regular Unleaded | 2,504 |
| Super Unleaded | 13,034 |
| Regular Leaded | 9,492 |

| To Auto Center | |
| --- | --- |
| Regular Unleaded | 7,001 |
| Super Unleaded | 4,000 |
| Regular Leaded | 8,501 |

---

1. The answering affidavit sworn to February 10, 1986 asserts "the MAZZARA station was a GETTY owned station which was prevented from purchasing, storing or dispensing non-branded product by reason of the agreements between the parties (although non-branded sales were permitted under certain circumstances). Not all stations however were controlled in this manner. Many stations are not owned by GETTY itself but are owned by the individual operators. In these instances, there may be a dealer contract but not necessarily an equipment lease agreement. Many stations own their own tanks and pumps and agree to purchase only a certain portion of their product from GETTY while they are permitted to purchase the balance from other available sources. After the Permanent Injunction was signed by this Court and filed, it was my understanding that our company could continue to deliver to those stations that were owned by the operators, not GETTY."

During the period approximately sixty-seven (67) deliveries were made by Shore Line to Eastchester Creek; six (6) deliveries to Dom's; and five (5) deliveries to Auto Center. Eastchester Creek also purchased unbranded gasoline from Dino Petroleum, a Shore Line competitor.

In February, 1985, Getty Petroleum's predecessor in title to the many franchised gasoline stations operating under the "GETTY" trademark was acquired by Getty Petroleum under a corporate name of Power Test.

Eastchester Creek operated as an individually owned gasoline station under a Getty franchise since 1970. On December 14, 1981, Eastchester entered into a franchise agreement (described as a "Dealer Contract") for a period of 3 years and 6 months with Getty Refining and Marketing Company ("Getty Refining"), predecessor to Power Test. The agreement, by its terms, was extended from year to year "provided, however, that Dealer [franchisee] may cancel this contract at any time so long as he gives Company [franchisor] at least ninety (90) days prior written notice to cancel same." The agreement provided that:

> Company shall sell and deliver to Dealer and Dealer shall purchase and take from Company during the term hereof Dealer's requirements of Company's Gasolines, Motor Oils, Greases and inventory for resale at the above premises of Dealer.

Prior to 1981 and subsequent thereto Eastchester Creek purchased about one-third of its gasoline from sources other than Getty Refining. Some of the supply of gasoline was purchased on the "spot market" at a cost of 10¢ to 15¢ less than the cost of Getty gasoline. Getty Refining was fully aware of the practice and countenanced this deception practiced on the consuming public.

2. It appears to the court that one of the reasons that Getty Refining, Power Test and Getty Petroleum permitted the practice is that Eastchester Creek was one of Getty's highest volume customers on the entire East Coast. Eastchester

When Power Test succeeded to Getty Petroleum's rights as franchisors in February, 1985, Power Test was aware of the practice and acquiesced in the practice after it obtained control of the supply of the gasoline stations. The practice continued in and after July 1985, when Power Test changed its name to Getty Petroleum Corp.[2]

Since February 1985, the time of the takeover from Getty Refining, Power Test and Getty Petroleum did not supply regular leaded gasoline. Leaded regular gasoline was sold to the public under the GETTY trademark with the knowledge and acquiescence of Power Test and Getty Petroleum.

## DISCUSSION

Claims to the exclusive use of trade marks and names and for infringement, of the right are subject to equitable defenses. Under Section 33(b)(3) of the Lanham Act, 15 U.S.C. § 1115(b)(3) the right to use a mark which has become incontestable (Section 15 of the Lanham Act, 15 U.S.C. § 1065) is subject to the defense

> That the registered mark is being used, by or with the permission of the registrant, so as to misrepresent the source of the goods or services in connection with which the mark is used.

In *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena*, 293 F.Supp. 892, 917 (S.D.N.Y. 1968) (Mansfield, D.J.) distinguishing the defense of laches from acquiescence, held:

> As distinguished from laches, acquiescence constitutes a ground for denial of relief only upon a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant express or implied that the plaintiff would not assert his trademark rights against the defendant (citations omitted). Although acquiescence may bar relief even where the plaintiff acts diligently, whether conduct

Creek had the right to cancel the agreement as of June 30, 1985 by serving notice of cancellation at any time prior to October 31, 1984. Thus Eastchester Creek appears to have had the whip hand in dealing with its franchisor.

amounts to acquiescence turns on examination of all the circumstances, and requires a balancing of equities.

The Second Circuit Court of Appeals cited the above quoted portion of the opinion with approval, 433 F.2d 686, 704 (2d Cir. 1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

The equitable principles underlying the defense of acquiescence, we believe, carry over to contempt proceedings that seek to enforce adherence to judgments granting relief for trademark infringement. We also believe that where the owner of the trademark has participated by its acquiescence in deceiving the public into believing that the source of goods is that of the owner of the trademark, enforcement of its right through contempt proceedings should be denied. 4 Callmann Unfair Competition Trademarks and Monopolies § 2219.[3]

We find from all the evidence that Getty Petroleum acquiesced in the delivery of unleaded gasoline by Shore Line to Eastchester Creek, Dom's and Auto Center.

The motion to punish Shore Line for contempt of the consent judgment of November 15, 1985 is denied. The motion by Shore Line to vacate the judgment is denied.[4]

We find that upon institution of this contempt proceeding, Getty Petroleum did a turnabout (particularly with reference to Eastchester Creek) and insists on proper use of its trade name and mark. Regular leaded gasoline is now sold with notice to the public that it is not a Getty product. From January 23, 1986 to May 22, 1986 (the date of trial), Getty Petroleum has not knowingly permitted the unlawful use of its trademark and tradename.

Shore Line is advised that the unauthorized use of the trade name and mark GETTY, hereafter, in violation of the consent judgment, may expose Shore Line to treble damages and counsel fees.

SO ORDERED.

This memorandum of decision contains findings of ˋfact and conclusions of law required under Rule 52(a), Federal Rules of Civil Procedure.

---

**3.** Callmann states:
A court of equity should not allow a situation to continue where one party at its bar is making profit by deceiving the public merely because the other party is guilty of inequitable conduct.

**4.** The judgment is clear and unambiguous. *See Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.1982), *cert. denied,* 454 U.S. 32, 102 S.Ct. 131, 70 L.Ed.2d 111 (1982). The court rejects Shore Line's claim that the enjoining provisions applied only to Getty-owned stations.