**YORK RESEARCH CORPORATION,**
Petitioner,

v.

**Harris LANDGARTEN,**
**et al., Respondents.**

No. 89 Civ. 5556.

United States District Court,
S.D. New York.

Sept. 15, 1993.

Cahill Gordon & Reindel, New York City (Thomas J. Kavaler, Robert Stein, of counsel), for petitioner.

Hecht & Goldston, New York City (Charles J. Hecht, Alan Goldston, of counsel), for respondent Clowes.

## OPINION AND ORDER

LEVAL, District Judge.

This is a motion by the Clowes Group of shareholders to hold York Research Inc. in contempt of this court's order of June 12, 1990. The controversy focuses on the seventh decretal paragraph of the court's judgment which, tracking the language of a previously rendered arbitration award which the court's judgment confirmed, ordered that "York shall issue fully paid and nonassessable York Research Corporation shares to those respondents who have not otherwise finalized settlement agreements with York...."

On July 17, 1990, a conference was held with the court to discuss Clowes' desire to move to hold York in contempt for various aspects of York's delay in issuing securities, causing them to be registered, and performing other acts required under the court's final judgment. At the July 17, 1990, conference the parties discussed the form of an investment letter that the Clowes Group would submit before receiving its shares. At the conference Mr. Hecht, the Clowes' attorney, asserted that his clients could not live with a "no-hypothecation" representation because they intended to use the stock promptly as collateral. The court inquired of York whether it needed a no-hypothecation representation. York's attorney answered that it did not. The conference then ended with apparent agreement between the parties that the Clowes Group would furnish an investment letter that did not include a no-hypothecation representation and the stock would be immediately delivered.

Following the conference, however, the parties failed to reach agreement on the terms of an investment letter, and York did not deliver the shares until August 17, when they were registered.

Clowes reasserted its contempt motion. The court denied the motion by order of October 11, 1991. Clowes then sought rehearing correctly pointing out that the court's denial was premised on an incorrect assumption of facts.

Clowes contends that York contumaciously delayed making delivery of the York shares to the Clowes Group and that this delay caused serious damage in terms of loss of value to the Clowes shareholders. A hearing was held on July 2, 1993. Following the hearing I conclude that Clowes has failed to establish that York committed contempt.

■ 1. Clowes first contends that there was no justification for York's insistence that it receive an investment letter before delivering the shares. It contends that, given proper credit for a holding period dating back to the acquisition of the Techland stock, Clowes had already satisfied the investment requirement. Clowes contends furthermore that the court's judgment required delivery of the shares without reference to receipt of an investment letter. With respect to the latter argument I find that there is ambiguity in the court's order.

That order, tracking the arbitration award which it confirmed, ordered York to "issue ... shares" to the Clowes shareholders. Clowes contends that because this order included no reference to the receipt of an investment letter, York was without authorization to read in an entitlement of receipt of an investment letter. The issue is not so clear. For York points out that it promptly "issued" the shares to the Clowes group following the entry of the court's judgment. What it had not done is to deliver the certificates. Issuance gave the Clowes Group voting rights and dividend rights. York contends that the obligation to deliver was implicit rather than explicitly stated in the court's judgment. It contends that the implicit obligation to deliver carried with it implicitly York's right to protect itself against liability for resale of unregistered securities, allowing York to insist on receipt of an investment letter before being obligated to deliver the unregistered securities. If this were not so, York points out, it would have been exposed to liability as a statutory underwriter if Clowes had sold the unregistered shares.

For York to be in contempt would require a willful violation of a *clear* order. *Drywall Tapers & Pointers, Local 1974 v. Local 530, Operative Plasterers & Cement Masons,* 889 F.2d 389, 394 (2d Cir.1989), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990) (*quoting Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981)). I cannot find that the court's order was clear as to this issue. The court's order does not include an express statement of the obligation to deliver. Delivery is a distinct concept under the securities laws from issuance. Issuance had been accomplished. What had not been done was to make delivery, which the order did not expressly require. York concedes that the order implicitly obligated it to make delivery but contends that that implicit obligation included the implicit right to protect itself from being placed in violation of the law by the subsequent actions of the acquiring shareholders. I conclude that York's position is reasonable and that York was reasonably justified under the terms of the June 12, 1990, court order in requiring an investment letter as a precondition to making delivery. The court's order did not clearly require making delivery without having received an investment letter.

York was all the more entitled to interpret the court's order in this fashion after the July 17, 1990, conference. At that conference, the principal discussion between the parties had to do with the form of the investment letter that the Clowes Group would provide. After this discussion in the presence of the court, York was all the more justified in understanding the court's order to allow it to protect itself by insisting on an investment letter before making delivery. In a previous opinion, I wrote that "If York believed the securities laws required it to obtain protection against unlawful distribution, it was incumbent on York to seek a modification of the court's order, rather than unilaterally erect conditions to its compliance with the court's order." Order, Oct. 11, 1991. Given, however, the conference before the court on July 17, 1990, as well as the established practice of delivering unregistered securities only upon receipt of an investment letter, I do not find that York's insistence on an investment letter before delivering the shares constituted contempt.

As to Clowes' contention that it was entitled to a tolling period giving it credit dating back to the acquisition of the Techland stock, even if Clowes is correct in this contention, this was certainly not clear to York at the time of the court's order, and Clowes did not argue this point when the form of investment letter was under discussion at the July 17 conference.

■ 2. The second aspect of Clowes' contention is that, in rejecting Clowes' proposed form of investment letter after the July 17 conference, York committed a further contumacious disobedience of the court's order. I find that Clowes has failed to establish this contention.

Immediately following the July 17 conference, Clowes delivered a proposed form of investment letter to York. York was justified in rejecting this proposal which was deficient in two respects. First, the letter did not contain the crucial words asserting an investment intention. Second, the letter was drafted as a bilateral agreement which sought to pin down York as to various potentially disputed propositions. Accordingly, it failed to satisfy the customary requirement of an investment letter and it was furthermore over-ambitious in seeking to accomplish strategic goals beyond the simple assertion of investment intention.

York responded by proposing its own draft. York's draft was unsatisfactory to Clowes in two respects. First, it included an indemnification of York. Although such indemnifications of the issuer are sometimes found in investment letters, they are extraneous to the function of assuring that there will be no distribution of unregistered stock. York had no right to insist on an indemnification. Second, Clowes' attorney doubted whether York's draft was consistent with the intention to hypothecate the stock. Otherwise, this form of letter was satisfactory. Clowes' attorney, Mr. Hecht, testified that when he called York's attorney to protest, York's attorney was intransigent and refused to accept changes from its proposed form.

If, at this point, Clowes had delivered appropriate signed investment letters to York—for example, using York's form but striking the inappropriate indemnification and adding a clarification providing for hypothecation—and York had nonetheless continued to refuse to make delivery, Clowes would have had a very strong claim that York's continued refusal to deliver was a contempt. But instead, Clowes did nothing further. It neither delivered proper investment letters to York, nor sought the court's approval of an alternate form of investment letter. The matter stayed in this posture until York completed the registration of the stock, following which York delivered the certificates to Clowes.

Because Clowes had not delivered appropriate investment letters to York, York was reasonably justified in refusing to deliver its unregistered shares. I cannot find that this refusal constituted a contempt of the court's order.

For the reasons stated above, Clowes' motion to hold York in contempt for delay in delivering the shares to the Clowes group must be denied.