UNITED STATES of America, Petitioner,

v.

**D–M SALES CORPORATION a/k/a Supreme and Export and Raymond Mizrahi, Respondents.**

Misc. No. 94–206 (JS).

United States District Court,
E.D. New York.

Nov. 6, 1995.

Jennifer C. Boal, United States Attorney's Office, Civil Division, New York City, for plaintiff.

## ORDER

SEYBERT, District Judge:

Pending before the Court is a motion by petitioner to hold respondents in civil contempt of the Court's March 17, 1995 Order. For the following reasons, petitioner's motion is granted.

## BACKGROUND

On August 2, 1994 the Consumer Product Safety Commission Staff ("Commission") issued a Special Order and Subpoena ("Subpoena"), pursuant to sections 5 and 27(b) of the Consumer Product Safety Act and 16 C.F.R. Part 1118, requiring respondents to answer certain questions contained in the Subpoena and to provide required records. The Commission issued the Subpoena in connection with an investigation regarding the safety history of several of respondents' products. Respondents import and/or distribute in commerce certain extension cords not listed by Underwriters Laboratories, crayons and other art materials. Despite repeated demands from the Commission, respondents have failed to comply with the Subpoena.

On or about December 16, 1994, petitioner made an application to the Court for an Order enforcing the Subpoena, and the Court signed an Order to Show Cause why the Court should not enforce compliance with the Subpoena. The parties then entered into a Stipulation and Order signed by the Court on February 1, 1995, whereby respondents agreed to comply with the Subpoena. On January 31, 1995 and February 28, 1995, however, respondents provided incomplete and unsworn answers to the Subpoena in disregard of the Stipulation.

On March 17, 1995, the Court issued an Order directing respondents to provide information responsive to the Commission's Sub-

poena within fifteen (15) days of receipt of the Order. The Court further ordered that:

should respondents fail to comply with this Order then this Court may, upon written application of the government with notice to respondents, enter an order holding respondents in contempt for violation of this Order and may impose sanctions of up to $100.00 per day until the contempt is cured, as well as award costs to the United States to compensate it for the expenses incurred in obtaining compliance with this Order.

On March 31, 1995, petitioner sent a copy of the March 17, 1995 Order by federal express to respondents. On June 7, 1995, petitioner mailed another copy of the Order to respondents by certified mail return receipt requested and asked respondents to comply with the Order within ten (10) days.

To date, respondents have failed to submit any material to petitioner in compliance with the March 17, 1995 Order. In addition, until today, petitioner never received a response from respondents to this motion for civil contempt sanctions.

## DISCUSSION

■ It is firmly established that "'the power to punish for contempts is inherent in all courts.'" *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Ex parte Robinson,* 19 Wall. 505, 510, 22 L.Ed. 205 (1873)). This inherent power "reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798, 107 S.Ct. 2124, 2132, 95 L.Ed.2d 740 (1987)). Congress has specifically authorized the Court to hold a party in contempt if that party has failed to obey an order of the

Court enforcing a subpoena issued by the Commission,[1] as is the instant case.

■ Generally, the purpose of holding a party in civil contempt is " 'to enforce compliance with an order of the court or to compensate for losses or damages.'" *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.1981) (quoting *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)). Civil contempt sanctions "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *International Union, United Mine Workers of America v. Bagwell,* —— U.S. ——, ——, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994).

■ To determine whether to hold a party in civil contempt, the Second Circuit has established a three prong test. *See United States v. Local 1804–1, International Longshoremen's Association, AFL–CIO,* 44 F.3d 1091, 1096 (2d Cir.1995) (citations omitted).

1. First, the order that the party allegedly failed to comply with must be clear and unambiguous. *Id.*

2. Second, the proof of noncompliance must be clear and convincing. *Id.*

3. Finally, the contemnor must not have been "reasonably diligent in attempting to comply." *Id.*

■ In the present case, these three conditions have been satisfied, and thus the Court holds respondents in civil contempt.

First, the March 17, 1995 Order issued by the Court was clear and unambiguous. The Order specifically instructed respondents to "provide sworn answers to all of the questions contained in the Subpoena and [to] supplement their January 31, 1995 and February 28, 1995 answers to questions 4(c), 6, 9, 10 and 13...." The Order further directed respondents to provide these answers within a fifteen day period. The March 17, 1995 Order also put respondents on notice that if they failed to comply with the Order, the Court would impose sanctions of (1) up to $100.00 per day until the contempt is cured

---

1. Congress has authorized the Court to issue an order enforcing a subpoena issued by the Commission, and "any failure to obey the order of the [C]ourt may be punished by the [C]ourt as a contempt thereof." 15 U.S.C. § 2076(c). Consequently, in the present case, civil contempt sanctions are authorized by both the federal common law and by Congress.

**434**

and (2) award costs to the United States to compensate it for the expenses incurred in obtaining compliance with the March 17, 1995 Order. Because the Order specifically and succinctly delineated respondents' responsibilities under the Order, it is clear and unambiguous.

Next, there is clear and convincing proof of respondents' noncompliance with the March 17, 1995 Order. After the Court issued its Order, respondents made no effort to supplement their answers or provide the requested documents within the fifteen-day reply period. Petitioner initially sent the Order to respondents on March 31, 1995 via federal express. On June 7, 1995, petitioner made an additional effort to contact respondents, sending another copy of the Order by certified mail return receipt requested. Respondents, however, did not meet, and still have not met, their obligations under the March 17, 1995 Order.

Finally, it is clear that respondents have not diligently attempted in a reasonable manner to comply with the March 17, 1995 Order. On at least two occasions petitioner has sent a copy of the Order to respondents, and to date respondents have not provided the requested information. Consequently, they have not "diligently attempted in a reasonable manner" to comply with the Order.

■ Because civil contempt sanctions are appropriate, the Court must next decide what type of sanction to impose. The Second Circuit has stated that the Court should consider three factors when imposing sanctions:

(1) "the character and magnitude of the harm threatened by the continued contumacy,

(2) the probable effectiveness of the sanction in bringing about compliance, and

(3) the contemnor's financial resources and the consequent seriousness of the sanction's burden."

*New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir.1989).

■ In essence, the Court must determine what fine is reasonable in relation to the facts. A contempt sanction may consist of a per diem fine, imposed for each day a contemnor fails to comply with a court order. With per diem fines, the future, indefinite, daily fines are purged once the jural command is obeyed. *International Union, United Mine Workers of America v. Bagwell,* ―― U.S. at ――, 114 S.Ct. at 2558. A court also may assess attorney's fees as a sanction for "the willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. at 45, 111 S.Ct. at 2133 (proclaiming that as part of the sanction a court may impose attorney's fees representing the entire cost of the litigation).

■ In the present case, to enforce compliance with the March 17, 1995 Order, the Court imposes a $100.00 per diem fine, beginning today and continuing until respondents have complied with the March 17, 1995 Order. The Court also directs respondents to pay the attorney's fees incurred by petitioner in connection with obtaining compliance with the March 17, 1995 Order.

So Ordered: