**PERFECT FIT INDUSTRIES, INC.,**
**Plaintiff-Appellee,**

v.

**ACME QUILTING CO., INC.,**
**Defendant-Appellant.**

Nos. 284 to 286, Dockets 80–7489, 80–7585 and 80–7587.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1980.

Decided April 13, 1981.

Herbert Monte Levy, New York City (Stanley H. Schindler, New York City, on the brief), for defendant-appellant.

Roberta L. Jacobs, Philadelphia, Pa. (Arthur H. Seidel, Seidel, Gonda, Goldhammer & Panitch, P.C., Philadelphia, Pa., on the brief), for plaintiff-appellee.

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and METZNER, District Judge.*

KEARSE, Circuit Judge:

These appeals, in a matter now before us for the second time, require us to review certain portions of a decree entered in the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge,* enjoining defendant from misappropriating plaintiff's rights in its trade dress in violation of state law, and to determine whether the district court erred when, in a subsequent order, it held defendant in contempt of the decree. We affirm the decree as being within the district court's discretion and affirm in part the subsequent order adjudging defendant in contempt of the decree, but we remand the contempt order for explanation of the fine imposed upon defendant.

I

Plaintiff Perfect Fit Industries, Inc., and defendant Acme Quilting Co., Inc., are manufacturers of mattress pads. In 1976, Perfect Fit introduced a new variety of mattress cover that it called "BedSack"; this new product was highly successful. Shortly thereafter, Acme began to market a comparable cover called "BedMate." In packaging their respective products, both firms employed printed pieces of cardboard, called J-boards, that bend over the end of the packaged product so that part of the board is visible to buyers whether the packages are laid end-to-end on a table or stacked on a shelf. In designing its own J-boards, Acme deliberately copied the design successfully employed by Perfect Fit on its J-board.

In April 1977, Perfect Fit sued Acme, alleging that Acme's J-board infringed Perfect Fit's common law rights in its trade dress and constituted a false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976). After a bench trial, the district court found that Perfect Fit's trade dress was "distinctive and memorable," and that the Acme J-board introduced at trial as Plaintiff's Exhibit 2 was "very similar" to, and had been deliberately copied from, Perfect Fit's J-board. The court concluded, however, that secondary meaning was a necessary element of a claim for relief under both § 43(a) and New York's common law of unfair competition, and that Perfect Fit had failed to meet its burden of proving secondary meaning. Accordingly, the court entered judgment for Acme.

Perfect Fit appealed, and this Court reversed the judgment insofar as it denied injunctive relief on plaintiff's state law claim. Specifically, we held that secondary

---

* The Honorable Charles M. Metzner, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

meaning was not an element of New York's common law action for misappropriation of trade dress, and that Perfect Fit had made a sufficient showing of likelihood of customer confusion to warrant the granting of injunctive relief.[1] We therefore reversed the judgment dismissing Perfect Fit's complaint and remanded the action for entry of an injunction "against further use of the offending J-boards by Acme." *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 955 (2d Cir. 1980).

1. We held that Perfect Fit was not entitled to damages because it had not shown that Acme's infringement had actually confused consumers.

2. The proposed order was as follows:

Pursuant to the Judgment rendered by the United States Court of Appeals for the Second Circuit on February 26, 1980 in Appeal No. 79–7329, it is hereby ordered:

1. That defendant, its officers, agents, servants, employees and attorneys and all persons acting in active concert or participation with them who receive actual notice of the order are hereby enjoined from use of the trade dress exemplified by Plaintiff's Exhibits 2 and 3, and any trade dress which is substantially similar thereto;

2. That defendant deliver up to counsel for plaintiff for destruction by such counsel within fifteen (15) days from the date of entry of this Order, all package inserts, all advertising materials, catalogues, promotional materials, and any other written material in its possession, custody or control which comprises and/or illustrates the trade dress exemplified Plaintiff's [*sic*] Exhibits 2 and 3, and any trade dress which is substantially similar thereto;

3. That defendant within fifteen (15) days from the date of entry of this Order, send to each distributor, jobber, wholesaler or other customer to whom defendant has, at any time within the six month period preceding entry of this Order, distributed any package inserts of the type exemplified by Plaintiff's Exhibits 2 and 3, and any trade dress which is substantially similar thereto, a letter, by certified mail, return receipt requested, in the form of the letter annexed hereto as Exhibit A, with each of said letters to be accompanied by a copy of this Order and send to counsel for plaintiff a carbon copy of each such letter;

4. That defendant deliver up to counsel for plaintiff for destruction by such counsel within forty-five (45) days from the date of entry of this Order all package inserts returned to defendant by each distributor, jobber, wholesaler or other customer in accordance with the letters sent pursuant to paragraph 3 of this Order;

On remand, Perfect Fit submitted to the district court a proposed order, set forth in full in the margin,[2] to (1) enjoin Acme's "use of the trade dress exemplified by Plaintiff's Exhibits 2 and 3, and any trade dress which is substantially similar thereto"; (2) require Acme to deliver to plaintiff's counsel, for destruction, all material in Acme's possession or control "which comprises and/or illustrates the trade dress exemplified [by] Plaintiff's Exhibits 2 and 3, and any trade dress which is substantially

5. The plaintiff, as the prevailing party, is awarded its costs incurred in this action.
Date:_____

Exhibit A to Proposed Order

[LETTERHEAD OF ACME QUILTING COMPANY, INC.]
CERTIFIED MAIL–RETURN RECEIPT
REQUESTED

We are writing to you pursuant to the terms of an Order entered March —, 1980 by the United States District Court for the Southern District of New York in Civil Action No. 77–2004, Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc. A copy of this Order is enclosed herewith.

Acme Quilting Co., Inc. has been enjoined from use of package inserts of the type exemplified by Plaintiff's Exhibits 2 and 3, photographs of which are enclosed herewith, and any trade dress which is substantially similar thereto.

Furthermore, we are required by Order of the Court to effect retrieval of all package inserts of the type exemplified by Plaintiff's Exhibits 2 and 3 and any trade dress which is substantially similar thereto from each distributor, jobbers, wholesaler or other customer to whom such package inserts have been distributed at any time with [sic] the six month period preceding entry of the Court's Order.

Accordingly, you are requested to return to Acme Quilting Co., Inc. within fifteen (15) days of the date of your receipt of this letter all such package inserts at our expense. You may take a credit on your next order for such expense or submit a statement to Acme Quilting Co., Inc. for such expense.

Very truly yours,
ACME QUILTING CO., INC.
Enclosures
cc: Arthur H. Seidel, Esq.
    Seidel, Gonda, Goldhammer
    & Panitch, P.C.
    600 Three Penn Center Plaza
    Phila., Pennsylvania 19102

similar thereto"; and (3) require Acme, within fifteen days of entry of the order, to send a letter to customers and other persons to whom Acme had within the preceding six months distributed "any package inserts of the type exemplified by Plaintiff's Exhibits 2 and 3, and any trade dress which is substantially similar thereto"; the letter was to state that Acme had "been enjoined from use of package inserts of the type exemplified by Plaintiff's Exhibits 2 and 3, photographs of which" were to be enclosed in the letter, and to request the return of such package inserts to Acme.

Acme's general counsel acknowledged receipt of the proposed injunction and, by letter, urged the court to strike the provision requiring the recall of the offending J-boards from Acme's customers, contending that

> the formats used in Exhibits 2 and 3 referred to in Perfect Fit's proposed order were discontinued by Acme over 18 months ago and further were modified about 90 days ago so as to have a completely distinctive and different appearance from Exhibits 2 and 3. We respectfully request a hearing to demonstrate such facts.

The court heard argument on Perfect Fit's proposed injunction on April 22, 1980. Acme's general counsel acknowledged that a recall requirement was within the court's discretion,[3] but argued that the relative injury to Perfect Fit and cost to Acme did not justify such relief. Acme's president stated his estimate that the cost of a recall would be between $50,000 and $100,000. Following the hearing, the court gave Acme additional time to submit papers in connection with the proposed injunction. A post-hearing brief submitted by Acme on May 5 argued against a recall order and proposed certain changes in Perfect Fit's proposed injunction as follows:

> Not only should Paragraph 3 (concerning recall) of Plaintiff's proposed Order be completely stricken, but Paragraphs 1 and 2 thereof should be modified to read as follows:

> 1. "That Defendants [sic], its officers, agents, servants and employees and all persons acting in active concert or participation in business with the Defendant who receive actual notice of the Order are hereby enjoined from use of the trade dress set forth as Plaintiff's Exhibits 2 and 3 and any trade dress which is substantially similar thereto."

> 2. ["]That Defendant destroy, within fifteen days from the entry of this Order, all package inserts, all advertising materials, catalogues, promotional materials and any other written material in its possession, custody or control which is the same or substantially the same as Plaintiff's Exhibits 2 and 3."

On May 19, 1980, the district court entered its injunctive order, in the form requested by Perfect Fit (see note 2 supra), and issued an opinion stating its reasons for granting the injunction. The order thus enjoined Acme from using the offending trade dress immediately and directed Acme to surrender to Perfect Fit's counsel all offending J-boards and other materials in its possession and to send the recall letter to each of Acme's customers by June 3, 1980.

On May 19 and 20, respectively, the Clerk of the district court mailed copies of the injunction and the opinion to the parties. Acme's counsel claims not to have received them. On May 21, 1980, the New York Law Journal printed a notice that an order, the contents of which were unspecified, had been entered in the case; Acme's counsel read this notice. Acme's counsel telephoned the district judge's chambers to request that a copy of the order be sent to him. The judge's law clerk mailed a copy to him, but Acme's counsel claims that he did not receive this copy of the order either. Since Acme's counsel did not go to the court clerk's office to obtain or inspect the May 19 order, he claims that he did not learn of the specific terms of the order until he received a copy of the order from Perfect Fit's counsel on June 3, 1980, the date by

---

**3.** Acme's counsel stated as follows: "It's in your Honor's discretion as to whether the in-junction should include recall provisions, that's what I would like to talk about."

which Acme was required to surrender its stock of offending J-boards and to mail the recall letters. After indicating to Perfect Fit's counsel on June 3 that Acme would comply with the May 19 order if Perfect Fit would allow it additional time, Acme's counsel informed Perfect Fit on June 4 that instead an appeal would be taken from the May 19 order.

On June 13, 1980, Perfect Fit moved to hold Acme in contempt. At the hearing on this motion on June 23, Perfect Fit introduced the testimony of Acme's general counsel that he had informed Perfect Fit's counsel on June 3 that Acme had not complied with the May 19 order, and that as of the date of the hearing he did not know that any steps had been taken toward compliance. In addition, there was testimony that Acme products packaged with the offending J-boards had been purchased in the New York metropolitan area on June 13 and 17, 1980. For its part, Acme disputed the relevance of Perfect Fit's evidence concerning the availability of Acme products with the offending J-boards, and argued that it could not be held in contempt because it had not known of the May 19 order, because it was unable to comply with the order, and because the order's reference to trial exhibits, which were not attached to the order, made it impermissibly vague.

The district court ruled that a litigant has a duty to follow the progress of an action and to inform himself of the terms of an order he may wish to challenge. It found that Acme had received sufficient notice of the May 19 order and that it had not complied with the order. In addition, the court found that the order was not impermissibly vague as to Acme because Acme's president had attended both the initial trial and the hearing on the proposed order and was therefore familiar with the exhibits referred to in the order. On June 24, 1980,

the court entered an order holding Acme in contempt of the May 19 order. The June 24 order directed Acme to surrender its present stock of J-boards and mail the recall letters by June 27 and to surrender J-boards received pursuant to the recall by July 28, 1980; it further ordered that Acme be fined $5000 per day if it failed to comply with the June 27 and July 28 deadlines.

Acme has appealed from both the May 19 injunction and the June 24 contempt order, pressing most of the contentions it asserted below.[4] It argues principally that the May 19 order was improper because the governing law does not permit the court to order a recall of infringing materials. As to the June 24 contempt order, Acme contends chiefly that it had insufficient notice of the order, that the order was impermissibly vague, that there was insufficient proof that the order had been violated, that compliance with the order was impossible, and that the $5000 per day fine was arbitrary. Finding ourselves in substantial agreement with the district court, we affirm the May 19 order, and we largely affirm the June 24 adjudication of contempt. However, we remand the June 24 order insofar as it specified a $5000 fine for noncompliance so that the district court may explain the basis and purpose of the fine.

## II

We turn first to the propriety of the recall provision of the district court's May 19 order. The recall provision is an unusual, and perhaps unprecedented, remedy for a violation of New York's law of unfair competition. Nonetheless, we conclude that the imposition of a recall requirement is well within the district court's broad powers as a court of equity, and that the district court properly exercised these powers in the present case.[5]

4. Acme filed its notice of appeal from the May 19 order on June 17, 1980, and asked the district court to stay and modify the order. The district court denied Acme's motions on June 19, 1980, and Acme filed a notice of appeal from this ruling as well. Acme has not pressed the stay or modification issues before us, how-

ever, and to the extent that those issues are not encompassed by the appeals from the May 19 and June 24 orders, we affirm the June 19 order without discussion.

5. We find no greater merit in Acme's other arguments, including its claim that it is improperly required to reveal customer lists and its

■ It is well settled that the district court's equity jurisdiction empowers it "to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 947 (2d Cir. 1969). Acme's contention is, however, that New York law simply forbids recall as a remedy for unfair competition. The decisions cited by Acme hardly stand for so sweeping a proposition. So far as appears, the New York courts have never ordered a recall of offending trade dress, and they have sometimes permitted defendants to exhaust existing stocks of infringing materials.[6] But the fact that a recall has never been ordered hardly means that the remedy is prohibited. Certainly we are aware of no authority stating that the New York courts are without the power to order such a remedy. More fundamentally, it would not matter if New York did bar its courts from granting that remedy. State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 106, 65 S.Ct. 1464, 1468, 89 L.Ed. 2079 (1945)

("a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it"); *Clark Equipment Co. v. Armstrong Equipment Co.*, 431 F.2d 54 (5th Cir. 1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650 (1971).

Finally, we note that there is federal precedent for use of the recall remedy in cases such as this. *See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 308 F.Supp. 489 (S.D.N.Y.1969) (on remand from 411 F.2d 1097 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970)); *Sweetarts v. Sunline, Inc.*, 299 F.Supp. 572 (E.D.Mo.1969), *aff'd in part and rev'd in part on other grounds*, 436 F.2d 705 (8th Cir. 1971); *Clairol Inc. v. Shapiro*, 158 U.S.P.Q. 427 (C.D.Cal.1968). *See also Cutler-Hammer, Inc. v. Standard Relay Corp.*, 328 F.Supp. 868, 881 (S.D.N.Y.1970), *aff'd per curiam*, 444 F.2d 1092 (2d Cir. 1971). The circumstances in *Kiki Undies* were remarkably similar to those of the present case, except that the plaintiff's claim was decided under federal trademark laws rather than under state laws of unfair competition.[7] The injunctive order fashioned by

contention that injunctive relief is barred by Perfect Fit's "unclean hands."

We reject Acme's argument that the portion of the injunction that directed Acme to furnish Perfect Fit's counsel with copies of the recall letters improperly compels Acme to disclose its customer lists. The contention that these lists are confidential and that the requirement of their disclosure is improper was supported only by the barest and most conclusory allegation in an affidavit of its president; and this feature of the injunction elicited no protest whatever from Acme before, at, or after the hearing on the proposed injunctive provisions.

Acme's "unclean hands" defense is based on its counterclaims for damages allegedly sustained by Acme as a result of defamatory statements made by Perfect Fit to Acme's customers. The district court conducted a separate trial of these counterclaims, and a jury awarded.Acme some $7.5 million in damages. Acme argues that Perfect Fit is barred from equitable relief because of this verdict. The district court, however, set aside this verdict and granted Perfect Fit a new trial on the ground that such a verdict shocked the " 'judicial conscience.' " *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 494 F.Supp. 505, 509 (S.D.N.Y. 1980). Even assuming that the alleged libel by

Perfect Fit were sufficiently related to Acme's unfair competition to warrant invocation of the "unclean hands" doctrine, the district court's granting of a new trial made that defense unavailable. We note also that, following the argument of this appeal, the new trial was held and resulted in a verdict in favor of Perfect Fit.

6. *See, e. g., Thomas J. Valentino, Inc. v. Majar Discs, Inc.*, 138 N.Y.S.2d 494 (N.Y.Sup.Ct. 1955).

7. Acme argues that *Kiki Undies* is distinguishable because the injury sustained through trademark infringement—dilution of the mark—differs in character from the injury flowing from an act of unfair competition. We grant the distinction, but find in it no reason to preclude a recall requirement in cases decided under state law.

Acme also seeks to distinguish *Kiki Undies* on the basis that the defendant in that case had been on notice that its conduct was illegal, and that Acme, by contrast, had distributed its J-boards in reliance on the district court's initial ruling that its conduct had not violated Perfect Fit's rights. This distinction is illusory. In *Kiki Undies* as in this case, the infringing de-

the district court required the defendant, *inter alia,* to use its best efforts, on a continuing basis, to withdraw the offending materials from all customers, retailers and other persons. The district court here had no less power to order Acme to make a single request to its distributees to return the offending J-boards.

We conclude that this was an appropriate case for the exercise of the court's power to require a recall. The district court found that Acme had intentionally copied Perfect Fit's trade dress, and on appeal we held that, as a matter of law, Acme's trade dress was likely to cause confusion among customers, *see* 618 F.2d at 954–55. Acme's infringing trade dress was therefore likely to divert customers from Perfect Fit's product to Acme's. Particularly because the first appeal had prolonged the litigation and therefore increased the probable injury to Perfect Fit, the district court was entirely justified in fashioning swift and complete relief for Perfect Fit. The recall procedure would naturally hasten the removal of the offending materials from public view and therefore seek to end quickly the injury to Perfect Fit.

Acme's argument that the recall provision is unduly burdensome is unpersuasive. Of course, a district court should carefully consider the likely burden and expense of a recall before it imposes the remedy. In some circumstances the imposition of a recall may be unduly onerous, as where the defendant's products are widely distributed and particularly expensive to ship. Or the probable benefit to the plaintiff from a recall may not outweigh the burden to the defendant in some cases even if that burden is relatively light. These are matters to be weighed in the first instance by the district court, and we see no abuse here of the district court's discretion. Nothing in the record developed below suggests that appropriate consideration was not given to these questions or indicates that Acme would suffer unduly under the May 19 order. The order did not require Acme to take extensive action to retrieve the J-boards. The company need only have written its customers requesting a return of the boards and paid the cost of the return for those customers who complied. *Compare Kiki Undies, supra.* Acme's evidence concerning the cost of this program was wholly speculative [8] and was founded on the unwarranted assumption that every person contacted would return not only the J-boards, as requested, but the mattress covers as well. Given the flimsiness of Acme's showing of burden, we can hardly say that the district judge abused her discretion in granting the remedy.

fendant had prevailed in the district court, but lost on appeal. *See* 411 F.2d 1097 (2d Cir. 1969), *rev'g* 160 U.S.P.Q. 775 (S.D.N.Y.1968). In neither case did the recall penalize the defendant for acting in accordance with the judgment at trial. Rather, the recall served merely as a means of enforcing the plaintiff's rights as ultimately adjudicated. Thus the recall was a proper remedy for unlawful acts, not an improper penalty for lawful acts.

8. Acme submitted no affidavits, documentation, or sworn testimony to support its president's statement that the cost of recall would be $50,000—$100,000. Nor does it appear that this estimate was arrived at on the basis of any detailed study, in light of the following colloquy at the hearing on the proposed injunction:

THE COURT: Let me ask you this, what is your claim as to the amount of the expense based on, have you had a study made by somebody as to what this would cost?

MR. RATTNER: We have thought about it.

THE COURT: The question is, have you had that study made? You said it would cost a lot of money.

MR. RATTNER: We have had a study made.

THE COURT: What study is that?

MR. RATTNER: The study that we have talked to our traffic manager, we have talked to our mail department and we have estimated the cost of the mailing to the customer, the reply and the average amounts outstanding that would be return based on freight only.

It would amount to somewhere in the neighborhood, freight two ways, fifty to a hundred dollars per customer. That's only the freight.

It's a very costly item to ship. Each one of those costs—

THE COURT: How many customers do you have?

MR. RATTNER: Using this, somewhere in excess of 1,500 possibly 2,000.

Finally, although our opinion in the first appeal referred to an injunction "against further use" of the offending J-boards, 618 F.2d at 955, nothing in our opinion or mandate purported to restrict the district court's discretion to fashion an appropriate decree. We find that the May 19 order was a proper exercise of that discretion.

## III.

■ In challenging the June 24 adjudication of contempt, Acme contends principally that it could not be held in contempt of the May 19 order because (1) it was never apprised of the terms of the order; (2) those terms were not sufficiently clear and specific; and (3) there was insufficient proof that Acme had violated them. It is indeed well settled that a person cannot be held in contempt of an order if he does not have knowledge of the order, see, e. g., Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126 (2d Cir. 1979); Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 51 (2d Cir. 1976), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), or if the terms of the order are unclear or ambiguous, see, e. g., International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 75–76, 88 S.Ct. 201, 207–208, 19 L.Ed.2d 236 (1967); Powell v. Ward, 643 F.2d 924 (2d Cir. 1981) (per curium), or if the proof of the party's noncompliance is not "clear and convincing," see, e. g., Powell v. Ward, supra; Erhardt v. Prudential Group, Inc., 629 F.2d 843 (2d Cir. 1980). Acme, however, was not the typical contemnor, who, having perused a court order, refuses to comply with it or fails to do so with sufficient energy and dispatch. Cf. Powell v. Ward, supra; Fidelity Mortgage Investors, supra. Rather, Acme's transgression stemmed from its remarkable failure to inform itself of the precise terms of the order in the first place. In the circumstances, the finding of contempt was entirely appropriate.

As noted above, ignorance of the term of a decree would ordinarily preclude a finding of contempt. Nevertheless, a party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt. The party and his counsel have a duty to monitor the progress of the litigation and to ascertain the terms of any order entered against the party. Unexcused failure to do so may justify a finding of contempt when the party knows that some order has been entered against him. Cf. United States v. Bryan, 339 U.S. 323, 330–31, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950) (dictum); United States v. Asay, 614 F.2d 655, 660 (9th Cir. 1980); United States v. Swingline, Inc., 371 F.Supp. 37, 45 (E.D.N.Y.1974); In re D.I. Operating Co., 240 F.Supp. 672 (D.Nev. 1965) (self-induced inability to comply with court order not a defense to contempt).

■ Under these principles, there was no lack-of-notice impediment to the district court's finding that Acme was in contempt of the May 19 order. Even if Acme's counsel did not receive either of the copies of the order that were mailed to him by the Clerk of the court or by the judge's law clerk, he learned on or about May 21 that an order had been entered in the case. And he knew that some sort of injunction would have been entered against his client: he knew that the Court of Appeals had ordered that injunctive relief be granted against his client; he knew that the proposed order submitted by Perfect Fit upon remand would require his client to take immediate action, including a recall, if it were adopted by the district court; and he knew that even Acme's own proposed alternative would require Acme to take action. Counsel knew or should have known that Fed.R.Civ.P. 77(d) required the clerk of the Southern District to mail notice of the May 19 order to him "[i]mmediately upon [its] entry."[9] Counsel was also aware of the district judge's practice of mailing copies of

---

9. Rule 77(d) provides in pertinent part: "Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail ... upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing." Service is to be made in accordance with Fed.R.Civ.P. 5, which requires service on a party's attorney.

orders to affected counsel shortly after filing. Thus, if counsel had not received copies of the order in the mail shortly after he read the May 21 *Law Journal* notice, he should have realized that either the mails or the court's notification systems had broken down, and he should have taken immediate steps to secure a copy of the order. Counsel's simple act of telephoning the judge's chambers to request that a copy of the order be mailed to him was inadequate. He failed to take the one step that was certain to secure a copy of the May 19 order: he failed to go, or to send a messenger, to the court clerk's office to ask for one. In the circumstances, counsel's failure to obtain a copy of the May 19 order from the clerk's office and to inform himself and his client of their precise duties cannot be the basis of a defense of lack of notice.

■ Nor do we find merit in Acme's contention that, because the May 19 order referred in haec verba to Plaintiff's Exhibits 2 and 3 without attaching those exhibits, Acme was unable to comply with the injunction because it was too vague. We recognize that Fed.R.Civ.P. 65(d) provides, in pertinent part, that "an injunction . . . shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The reason for this requirement is that vague or general injunctions cannot be easily obeyed or effectively and fairly enforced.

> Rule 65(d) reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly· and unintentionally transcend its bounds.

*Sanders v. Air Line Pilots Ass'n*, 473 F.2d 244, 247 (2d Cir. 1972). *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2955, at 541–42 (1973).

While we are not persuaded that Acme had sufficient knowledge of the identities of Plaintiff's Exhibits 2 and 3 simply because its president had attended the trial and the hearing on the proposed injunction, we conclude that Rule 65(d) was satisfied here because the record of the proceedings relating to the proposed injunction amply demonstrate Acme's grasp of these documents and its complete acquiescence in the reference to them. It is clear from Acme's responses to the proposed injunction that Acme knew precisely what J-board designs it was to cease using and to recall, and of which it was to send photocopies to its distributees. Its first response argued that "the formats used in Exhibits 2 and 3 referred to in Perfect Fit's proposed order [had been] discontinued," and that Acme's current J-boards had "a completely distinctive and different appearance from Exhibits 2 and 3." After the hearing on the proposed injunction, Acme proposed substitute paragraphs for the restraints on its use and possession of the offending materials; and its own proposed language would have "enjoined [it] from use of the trade dress set forth as *Plaintiff's Exhibits 2 and 3 and any trade dress which is substantially similar thereto*," and would have required it to destroy "material in its possession, custody or control *which is the same or substantially the same as Plaintiff's Exhibits 2 and 3*." (Emphasis added.)

Thus, although in other circumstances the district court would have been required by Rule 65(d) to attach photocopies of Exhibits 2 and 3 to its injunctive order, as was done with the form of recall letter to be sent, we will not allow Acme, whose own suggested language referred to those exhibits, to excuse its noncompliance on the ground that the May 19 order was impermissibly vague.

■ Finally, while we agree with Acme that Perfect Fit's evidence concerning the continued display of the offending J-boards had little probative force,[10] there was sufficient evidence, most of it supplied by Acme itself, to show Acme's noncompliance with the May 19 order. Acme's insistence on its ignorance of the order provides amply

**10.** The evidence of post-June 3 purchases had minimal probative value in view of the fact that Acme's customers would have been free to retain their stocks of offending J-boards despite Acme's recall request.

"clear and convincing" proof of its noncompliance. Acme did not learn of the terms of the order until June 3, the last day for compliance; it told Perfect Fit's counsel on that day that there had been no compliance; its counsel testified on June 23 that he was unaware of any steps, as of that date, toward compliance; and Acme did not come forward with any evidence to indicate that it began efforts to comply on June 3 or any other date. In the circumstances, Perfect Fit made a sufficient showing of noncompliance to justify the finding of contempt.[11]

 One point as to the conditional fine imposed by the June 24 order merits consideration. The order provides for a $5000 per day fine on Acme in the event of noncompliance with the June 24 contempt order, and Acme challenges the amount of the fine as arbitrary and capricious.[12] The sanctions imposed upon a contemnor may properly serve to coerce future compliance or to remedy past noncompliance. *E. g., Powell v. Ward, supra; Vuitton et Fils S.A. v. Carousel Handbags, supra.* If a fine is imposed for compensatory purposes, the amount of the fine must be based upon the complainant's actual losses sustained as a result of the contumacy. *E. g., United States v. UMW,* 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947). If the fine is coercive, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* (footnote omitted). *See also International Business Machines Corp. v. United States,* 493 F.2d 112, 116 (2d Cir. 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). The district court did not state its reasoning in selecting the fine it imposed, and Perfect Fit has not defended this amount before us. Because we cannot review the propriety of the fine without being

informed of its purpose and basis, we vacate that portion of the June 24 order and remand it so that the district court may indicate its rationale for the fine.

The May 19 order is affirmed. The June 24 order is affirmed in part and vacated and remanded in part for explanation of the purpose and basis of the fine, with jurisdiction of the June 24 order retained in the Court of Appeals. Plaintiff shall recover the costs of this appeal.

---

11. On the basis of our own examination of the exhibits adduced at the contempt hearing, we reject Acme's claim that its latest versions of its J-boards were not substantially similar to Exhibits 2 and 3. As we noted in the first appeal, because this court had been presented with photographs of the J-boards, it is in as good a position as the district court to deter-

mine whether they are confusingly similar. *See* 618 F.2d at 954 n.6.

12. The record does not disclose whether Acme obeyed the June 24 order, or, if it did not, whether Perfect Fit sought to enforce the provision concerning the fine.