**GENERAL MOTORS CORP., Plaintiff,**

v.

**GIBSON CHEMICAL & OIL CORP.,
and Lee J. Roth, Defendants.**

No. 85CV1020.

United States District Court,
E.D. New York.

Jan. 31, 1986.

See also, 2d Cir., 786 F.2d 105.

Parker, Auspitz, Neeseman & Delehanty, P.C., New York City, Mark S. Ladner, Hollis L. Hyams, of counsel, for plaintiff.

Robert G. Del Gadio, Garden City, N.Y., Warren S. Beckerman, of counsel, for defendants.

McLAUGHLIN, District Judge.

Defendants seek an order permitting them to repackage and distribute certain goods alleged by plaintiff to infringe its trademark, or in the alternative an order directing plaintiff to remove all such goods from defendants' premises. Plaintiff opposes, and cross-moves for an order holding defendants in contempt of an order of this Court.

*Facts*

On March 18, 1985 plaintiff General Motors Corp. ("GM") obtained an order of seizure and impoundment and a temporary restraining order. The TRO barred defendants from infringing GM's "Dexron" trademark for automatic transmission fluid pending a hearing on its application for a preliminary injunction. A United States Marshal and a representative of GM went to defendants' warehouse to execute the order. Large quantities of allegedly counterfeit Dexron fluid and packaging were seized. Possibly at defendant Roth's suggestion, and at least with his consent, the goods were impounded in a section of defendants' warehouse.

A preliminary injunction hearing was held on March 28 and 29, 1985, whereupon this Court ordered that the restraining order be extended pending the submission of an injunction order. On May 1, 1985 the Court entered an order enjoining defendants from

> manufacturing, distributing, secreting, warehousing, selling, advertising, transporting, imitating, counterfeiting or, in any manner, commercially exploiting materials or merchandises in violation of the valid registered trademark "Dexron" owned and protected by General Motors, including any and all automatic transmission fluid, or other fluid, cans, wrappers, labels, boxes, cartons, papers, containers, packaging, signs, advertising, promotional materials, stamps, presses, plates, molds, matrices, or other means, mechanisms, or devices for making, printing, copying reproducing or display which counterfeit or infringe the registered and common law trademark "Dexron" ...

Defendants now wish to repackage and sell the impounded goods, or at least to have GM remove the goods from defendants' warehouse. This is necessary, they say, because keeping the fluid in its warehouse presents health and safety hazards, and continued storage would be a danger to the environment and a burden on the defendants. They point to a June 1985 spill in the warehouse as indicative of the potential hazards.

GM argues that resale of the impounded goods might deprive them of a proper remedy in this case. It also cross-moves for a contempt order, based on defendants' actions at a trade show in Chicago on August 28, 1985. There defendants apparently distributed a brochure advertising Dexron, in violation of this Court's order of May 1, 1985.

*Discussion*

*Repackaging*

■ Defendants wish to repackage and sell the allegedly infringing goods. To permit the defendants to dispose of the goods in the ordinary course of their business, however, would be to assume, in effect, that the goods do not infringe any protected interest of the plaintiff. GM has made a sufficient showing of infringement to entitle it to preliminary relief, and has posted security to reimburse defendants should that relief turn out to have been granted improvidently. I see no reason to disturb that state of affairs at this time, especially in light of the fact that to do so might deprive GM of a remedy to which it may become entitled. Plaintiff may eventually be entitled to have the goods destroyed, and the goods may serve as security for any money judgment GM obtains. Obviously neither of these objects can be accomplished if defendants are permitted to dispose of the goods at this time. Accordingly, the motion to repackage and sell the goods is denied.

*Removal*

■ Defendants argue that the presence of the goods in their warehouse presents a potential environmental hazard. They contend that GM should take responsibility for the seized goods by removing them from the warehouse and impounding them at some other location.

Such action appears to be unnecessary at this time. It has not been explained why an environmental hazard is presented by

the presence of transmission fluid in the warehouse of a company whose business is to blend and package automotive fluids, nor is it clear why defendants agreed to store the goods in the first place if such was the case. To the extent the danger arises from the inadequacy of defendants' packaging of the allegedly infringing goods, removal is not necessary. GM has already offered to advance any expenses incurred in transferring the fluid into vats or barrels in which it may be stored securely,[1] with those expenses treated as a cost and assessed by the Court against the losing party at the conclusion of the trial.

This proposal strikes the Court as the most reasonable and efficient resolution of the problem. Defendants are reminded that they are protected by the undertaking that GM has posted "for the payment of any damages any party may be held by this Court to be entitled to recover as a result of any wrongful seizure ..." (Preliminary Injunction Order at 5).

*Contempt*

GM asserts that defendants' distribution of the brochure displaying Dexron transmission fluid violates that portion of this Court's preliminary injunction order that enjoins defendants from advertising Dexron or using the mark in any promotional materials. They thus seek an order finding defendants in civil contempt of the May 1, 1985 order.

■ "A court has the inherent power to hold a party in civil contempt in order 'to enforce compliance with an order of the court or to compensate for losses or damages.'" *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir.) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). That power is properly exercised if the order is clear and unambiguous, the person had knowledge of the order, and proof of noncompliance with the order is clear and convincing. *Perfect Fit Indus.*

*Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 808 (2d Cir.1981).

Although defendants attempt to argue otherwise, there can be no question that the terms of the order enjoining defendants from "advertising ... or, in any manner, commercially exploiting" the Dexron trademark, including the use of "advertising [or] promotional materials," is unequivocal and unambiguous. It is equally clear that defendants have not complied with those terms: defendants admit that they distributed the offending brochure. Their arguments against a finding of contempt are directed to the knowledge requirement.

Lee J. Roth, an individual defendant and president of defendant Gibson Chemical & Oil Corp. ("Gibson"), has submitted an affidavit ("Roth Aff.") detailing the circumstances surrounding the distribution of the brochure at the convention in Chicago. He states that the display materials used by defendants at trade shows and conventions are packed in "show kits." Before the show kit for the Chicago meeting left Gibson, Roth, in an effort to comply with the injunction, had the two sample cans which bore the Dexron name removed from the kit. Roth claims to have been unaware that the brochure contained in the kit, which depicted forty-nine products, displayed two products bearing the Dexron mark. He also claims to have been unaware that use of the mark in display materials would violate the injunction, stating that he had not read the injunction order and that he was informed by his attorney only that he was prohibited from moving any of the seized materials and from manufacturing or distributing any fluid with the name Dexron. Defendants thus argue that they lack the knowledge to be in contempt.

■ It is clear, however, that the knowledge required of a party in contempt is knowledge of the existence of the order, *see Perfect Fit Indus. Inc. v. Acme Quilting Co., Inc., supra,* 646 F.2d at 808; *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir.

1. Defendants contend that they lack sufficient labor to accomplish such a transfer. The GM

offer, however, would cover the cost of whatever additional labor is necessary.

1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), not knowledge of the particulars of that order. Here defendants'

> transgression stemmed from [their] remarkable failure to inform [themselves] of the precise terms of the order in the first place ... [A] party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt.

*Perfect Fit Indus. Inc. v. Acme Quilting Co., Inc., supra,* 646 F.2d at 808.

Thus defendants' ignorance of the precise terms of an order—the existence of which they admit they were aware—does not insulate them from a finding of contempt. It does appear that the violation was inadvertent, but "a violation need not be wilful for a party to be found in civil contempt." *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters,* 428 F.2d 994, 1001 (2d Cir.1970).

Defendants' conduct in distributing the brochure thus does technically constitute contempt. More troubling, however, is the issue of the proper sanction. Sanctions for civil contempt "serve two functions: to coerce future compliance and to remedy past noncompliance." *Vuitton et Fils S. A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir.1979) (citing *United States v. United Mine Workers,* 330 U.S. 258, 302–04, 67 S.Ct. 677, 700–02, 91 L.Ed. 884 (1947)).

Coercion of future compliance appears to be unnecessary in this case. Defendants have represented that all the offending brochures will be destroyed (Roth Aff. ¶ 6), and that they have now fully familiarized themselves with the terms of the May 1 order (Defendant's Reply Memorandum of Law at 9). I trust that the warning that any future violations will be regarded by this Court with the utmost displeasure will suffice to ensure defendants' compliance with the order.

█ Any fine imposed must therefore reflect "actual losses sustained [by GM] as a result of the contumacy." *Perfect Fit*

*Indus. Inc. v. Acme Quilting Co., Inc.,* 646 F.2d at 810. Plaintiff is entitled to compensatory damages once it has proved that it has suffered harm as a result of a violation of the terms of an injunction. *Vuitton et Fils S. A. v. Carousel Handbags, supra,* 592 F.2d at 130.

█ GM has not demonstrated any actual damages it suffered as a result of defendants' distribution of the brochure. Defendant avers that it has not manufactured, sold or distributed any fluid using the Dexron mark since the preliminary injunction issued on May 1, 1985. Because the record now before me contains no evidence of actual damage to GM, no award will be entered at this time. Plaintiff will have an opportunity at the trial on the merits to adduce proof of damage from defendant's violation of the order. *Andre Matenciot, Inc. v. David & Dash, Inc.,* 422 F.Supp. 1199, 1211 (S.D.N.Y.1976). To that end, defendants are ordered to provide GM with an accounting of all orders for automatic transmission fluid received by defendants at the convention.

SO ORDERED.