11-502-cv
Tecnimed SRL v. Kidz-Med, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10th day of February, two thousand twelve.

PRESENT: BARRINGTON D. PARKER,
     REENA RAGGI,
     RAYMOND J. LOHIER, JR.,
       *Circuit Judges.*

-------------------------------------------------------------------------------

TECNIMED SRL,

      *Plaintiff-Counter-*
      *Defendant-Appellee*,

   v.              No. 11-502-cv

KIDZ-MED, INC., AMERICAN SCIENTIFIC RESOURCES, INC.,

      *Defendants-Counter-*
      *Claimants-Appellants*.

-------------------------------------------------------------------------------

FOR APPELLANTS:  Richard C. Yeskoo, Thomas T. Tamlyn, Yeskoo Hogan & Tamlyn, LLP, New York, New York.

FOR APPELLEE:  Jennifer B. Furey, Matthew P. Horvitz, Cooley Manion Jones LLP, Boston, Massachusetts; Anthony L. Miele, Miele Law Group PC, Boston, Massachusetts.

Appeal from an order of the United States District Court for the Southern District of New York (Paul G. Gardephe, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order entered on January 18, 2011, is AFFIRMED.

Defendants Kidz-Med, Inc. and American Scientific Resources, Inc. (collectively, "Kidz-Med") appeal from an order granting a preliminary injunction barring Kidz-Med's continued use of the trade dress for its non-contact thermometer, and requiring a recall of its thermometers featuring that trade dress and use of a new trade dress design. Kidz-Med maintains that the district court erred in determining that plaintiff Tecnimed SRL established the likelihood of success on the merits and irreparable harm required for a preliminary injunction, see Salinger v. Colting, 607 F.3d 68, 77–78 (2d Cir. 2010), or the propriety of a product recall as a remedy. We review the grant of a preliminary injunction for abuse of discretion, and we will reverse only if the injunction is based on an error of law or a clearly erroneous assessment of the evidence, or if it cannot be located within the range of permissible outcomes. See Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.  Likelihood of Success on the Merits

    a.  Trade Ownership

Kidz-Med submits that the district court erred in finding that Tecnimed, the manufacturer of the Thermofocus non-contact thermometer, established a likelihood of

2

success in demonstrating ownership of the challenged trade dress, which was created for use with the Thermofocus. Kidz-Med, which distributed the Thermofocus in the United States, claims that the evidence shows that it invented and first affixed the trade dress to the Thermofocus, making it the trade dress's owner. See 15 U.S.C. § 1125(a); Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1220 (9th Cir. 1996) (identifying various factors used to determine trademark's ownership between manufacturer and distributor, including "which party invented and first affixed the mark onto the product"); see also ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 147 (2d Cir. 2007) ("[S]o long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market." (internal quotation marks omitted)). We need not decide which legal standard applies to trade dress ownership disputes between a manufacturer and a distributor because the parties agree that, here, the Sengoku factors apply, see Tecnimed SRL v. Kidz-Med, Inc., 763 F. Supp. 2d 395, 403 (S.D.N.Y. 2011), and we identify no clear error in the district court's findings with respect to those factors and the ultimate issue of ownership.

The record shows that Tecnimed and Kidz-Med worked together to create the trade dress for Thermofocus thermometers sold in the United States. Although Kidz-Med undoubtedly devised the final package design, that design was based on key elements first conceived by Tecnimed, including "the purple and blue color scheme; the phrase '5 in 1'; the photograph of the mother holding a sleeping baby; and the five small illustrations depicting

3

a child, bottle, formula, nursery, and bathwater." Id. at 404. Moreover, the record shows that the trade dress Kidz-Med developed was approved by Tecnimed before it was used for the Thermofocus. These facts permitted the district court to find that Tecnimed invented the trade dress at issue.

While the district court did not identify which party first affixed the trade dress, that omission does not render clearly erroneous the finding that Tecnimed demonstrated a likelihood of success on the merits on the question of who owned the trade dress. Although the record is clear that Kidz-Med, not Tecnimed, affixed the trade dress to the Thermofocus thermometers sold in the United States, Kidz-Med did so pursuant to its distribution agreement with Tecnimed, which obligated Kidz-Med to "make use of Tecnimed's trademarks, trade names or any other symbols, for the only purpose of identifying and advertising the Products, within the scope of his activity as distributor of Tecnimed and in Tecnimed's sole interest." Bellifemine Decl., Ex A ¶ 8.1. In short, because Kidz-Med affixed the trade dress at the instruction, and for the benefit, of Tecnimed, the district court did not clearly err in according this action little weight in determining ownership. Further, record evidence showed that Tecnimed had used its earlier iteration of the Thermofocus trade dress, on which Kidz-Med's design was based, in the United States. Finally, Kidz-Med does not dispute the remaining factors on which the district court relied in concluding that Tecnimed likely owned the trade dress, including that Tecnimed manufactured the Thermofocus, and that Kidz-Med's name on the packaging did not outweigh the presence of Tecnimed's "Thermofocus" mark. See Tecnimed SRL v. Kidz-Med, Inc., 763 F. Supp. 2d at 404.

b.    Bad Faith

Kidz-Med challenges the district court's finding that it acted in bad faith in adopting the disputed trade dress for its non-contact thermometer, which informed the court's further determinations that use of the trade dress would cause consumer confusion and that a recall was necessary.  See Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (identifying "evidence that the imitative mark was adopted in bad faith" as one factor to consider in determining likelihood of consumer confusion); Perfect Fit Indus., Inc. v. Acme Quilting Co., 646 F.2d 800, 807 (2d Cir. 1981) (considering defendant's intentional, bad faith acts in reviewing district court's recall).  We are not persuaded that this finding was clearly erroneous.

The district court identified the following facts as supporting a bad faith finding: (1) Kidz-Med acted intentionally in employing a trade dress for its non-contact thermometers that looked similar to, and was designed to create confusion with, the Thermofocus packaging; (2) Kidz-Med issued misleading promotional materials that included testimonials from Thermofocus users; (3) Kidz-Med's website conflated the Thermofocus and Kidz-Med thermometers; (4) Kidz-Med tried to pass off its thermometer as the Thermofocus; and (5) Kidz-Med continued to use this trade dress despite receiving a cease-and-desist letter, the complaint in this lawsuit, and a warning from the district court at the preliminary injunction hearing that the trade dress probably infringed Tecnimed's mark.  See Tecnimed SRL v. Kidz-Med, Inc., 763 F. Supp. 2d at 408–09, 414.  Kidz-Med insists that its refusal to stop using its trade dress during this litigation is not indicative of bad faith, but demonstrates a good faith belief in the strength of its defense.

5

Kidz-Med misunderstands the import of the district court's finding. The district court identified bad faith in the totality of the evidence referenced. It emphasized Kidz-Med's conduct during this litigation only in reasoning that a recall order was appropriate because Kidz-Med had "deliberately sailed in harm's way" by continuing to use the trade dress despite warnings that it could lose. Id. at 415 (quoting Cherry River Music Co. v. Simitar Entm't, Inc., 38 F. Supp. 2d 310, 323 (S.D.N.Y. 1999)). This manifests no clear error in the overall finding of bad faith. Indeed, Kidz-Med concedes that it intentionally used the Thermofocus packaging as the basis for its non-contact thermometer's packaging, and the remaining findings as to deliberate confusion or deception are supported by the record.[1]

2.    Irreparable Harm

Kidz-Med faults the district court's finding that Tecnimed would suffer irreparable harm if Kidz-Med's infringing trade dress remained on the market. Kidz-Med maintains that the district court clearly erred in finding that Tecnimed was still selling the Thermofocus in the United States, and that those sales would be diminished by Kidz-Med's marketing of its competing thermometer.

At the preliminary injunction hearing, Tecnimed introduced evidence that Thermofocus thermometers distributed by Kidz-Med in the purple/blue packaging were still available for purchase in the United States from online distributors and brick-and-mortar

---

[1] The Trademark Amendments Act of 1999 § 5, Pub. L. 106-43 (Aug. 5, 1999), codified at 15 U.S.C. § 1125(a)(3), amended Section 43(a) of the Lanham Act to require that the person asserting trade dress protection also prove that the alleged trade dress is not "functional." See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 116 (2d Cir. 2001). The issue was not raised in the district court and has not been raised to us on appeal. Therefore, we consider it no further.

retail shops. Although Kidz-Med put forward evidence indicating that those thermometers were no longer being sold, the district court was entitled to resolve this factual dispute in favor of Tecnimed. See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) (holding that on clear error review, appellate court cannot "second-guess the trial court's choice between permissible competing inferences" (internal quotation marks and ellipses omitted)). Nor did the district court clearly err in finding that consumers would think Kidz-Med's non-contact thermometer was associated with, or a successor to, the Thermofocus, in light of Kidz-Med's prior distribution of the Thermofocus, its affixation of its mark to the Thermofocus packaging, and its use of a trade dress for its non-contact thermometers that could confuse consumers.

We reject Kidz-Med's argument that the district court erred in allocating the burden of proving irreparable harm. Kidz-Med conflates the district court's ruling on Tecnimed's preliminary injunction motion with the denial of Kidz-Med's subsequent motion to stay the proceedings. As the district court correctly held, it was Kidz-Med's burden to demonstrate its entitlement to a stay pending appeal. See In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007).

3.    Recall Order

Nor did the district court abuse its discretion in finding that a recall of Kidz-Med's non-contact thermometers would be more beneficial to Tecnimed than burdensome to Kidz-Med. See Perfect Fit Indus., Inc. v. Acme Quilting Co., 646 F.2d at 807 (stating that district court should consider relative benefit to trademark owner and burden to infringer when determining whether product recall is appropriate remedy). Kidz-Med does not dispute the

7

district court's finding that a recall would require it to contact five retailers and would cost $95,000 to complete.  See Tecnimed SRL v. Kidz-Med, Inc., 763 F. Supp. 2d at 416.  It complains that the district court did not weigh these facts against Kidz-Med's precarious financial condition.  In fact, the record shows that the district court specifically concluded that Kidz-Med should bear the costs despite its imminent insolvency because it had assumed the risk of a recall by intentionally keeping its non-contact thermometers on the market during this litigation's pendency.  See id.; see also Perfect Fit Indus., Inc. v. Acme Quilting Co., 646 F.2d at 807 (holding that defendant's intentional acts to infringe plaintiff's trademark supported district court's recall order).

4.      Conclusion

We have considered Kidz-Med's remaining arguments and find them to be without merit.  Accordingly, we AFFIRM the order of the district court.

                          FOR THE COURT:
                          CATHERINE O'HAGAN WOLFE, Clerk of Court